IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAROLYN FARREN and JOSEPH
FARREN, w/h,

    Plaintiffs,

  v.

BLANE SESSIONS, M.D.,

    Defendant.

CIVIL ACTION
NO. 18-4793

**OPINION**

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**August 5, 2019**

## I.　　INTRODUCTION

Carolyn Farren and her husband, Joseph Farren ("Plaintiffs") bring this medical malpractice suit against Dr. Blane Sessions, M.D. ("Defendant"). Ms. Farren sought treatment from Defendant after injuring her wrist. Defendant treated Ms. Farren for persistent pain, which included performing diagnostic testing and surgery. She alleges that Defendant failed to accurately diagnose her injury and performed "improper and unnecessary" surgery on her right wrist. In the Complaint, Plaintiffs assert claims for negligence (Count I), informed consent ("battery") (Count II), and loss of consortium (Count III).

On April 16, 2019, Defendant filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(5) for failure to timely serve pursuant to Federal Rule of Civil Procedure 4(m). (Doc. No. 3.) Defendant alleges that Plaintiffs did not send Defendant a copy of the Complaint by certified mail until March 7, 2019, well after the ninety-day deadline for service set forth in Federal Rule of Civil Procedure 4(m).

1

On April 19, 2019, Plaintiffs filed a Response to Defendant's Motion to Dismiss. (Doc. No. 4.) The Motion is now ripe for disposition. For the reasons discussed infra, the Motion to Dismiss will be denied.

## II. BACKGROUND

### A. Ms. Farren's Injury and Initial Treatment

In October 2016, Plaintiff Carolyn Farren ("Ms. Farren") injured her right wrist. (Doc. No. 1 ¶ 5.) Ms. Farren initially sought treatment from Premier Urgent Care in Media, Pennsylvania, where she had x-rays taken. (Id. ¶ 6.) On October 21, 2016, Ms. Farren began treatment for her wrist injury with Defendant Blane Sessions, M.D. ("Sessions" or "Defendant"). (Id. ¶ 7.) Defendant reviewed Ms. Farren's prior x-rays and diagnosed her with a right distal radius fracture, non-displaced.[1] (Id.) Due to complaints of persistent pain, Ms. Farren remained under the care of Defendant. (Id. ¶ 8.) In February 2017, Ms. Farren underwent an MRI which showed subsidence in her wrist.[2] (Id. ¶ 9.) She alleges that Defendant failed to document the subsidence in her medical records and failed to diagnose or discuss it with her. (Id.)

Ms. Farren further asserts that on March 10, 2017, Defendant performed "improper and unnecessary" surgery on her right wrist. (Id. ¶ 10.) Additionally, she claims that Defendant failed to diagnose and treat the subsidence. (Id.) Following surgery, Ms. Farren complained of

---

[1] The radius is one of two forearm bones and is located on the thumb side. The part of the radius connected to the wrist joint is called the distal radius. When the radius breaks near the wrist, it is called a distal radius fracture. Distal Radius Fracture (Wrist Fracture), Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/distal-radius-fracture-wrist-fracture (last visited Aug. 5, 2019).

[2] "Subsidence" is the sinking or settling of bone. Subsidence, MediLexicon, https://www.medilexicon.com/dictionary/85997 (last visited Aug. 5, 2019).

continuing and persistent pain in her right wrist, which she attributed to Defendant's failure to diagnose and treat the subsidence. (Id. ¶ 11.)

**B. Procedural History**

On November 6, 2018, Ms. Farren initiated this case by filing the Complaint against Defendant. (Doc. No. 1.) In Count I, Ms. Farren alleges that Defendant was negligent in rendering care and treatment for her injury. (Id. ¶ 17.) In Count II, she makes a claim for battery, alleging that Defendant failed to inform her of all of the risks, complications and potential harm associated with the wrist surgery he performed. (Id. ¶ 22.) And in Count III, Ms. Farren's husband, Mr. Farren, submits a claim for loss of consortium, alleging that Defendant's treatment of Ms. Farren has resulted in the deprivation of her companionship, consortium, and society. (Id. ¶ 29.)

Plaintiffs allege that they attempted to serve Defendant on December 4, 2018, with the Complaint by certified mail at the address that Ms. Farren had for Defendant at the time. (Doc. No. 4 ¶ 5.) On January 29, 2019, six days before the ninety-day limit was to run, the envelope was returned to Plaintiffs' counsel stamped with the words "return to sender - unclaimed, unable to forward - return to sender." (Id.) Plaintiffs' counsel then attempted to locate Defendant by performing several internet searches and by working with an investigator. (Id.) On March 7, 2019, Plaintiffs' counsel discovered Defendant's updated address and sent the Complaint to that address by certified mail. (Id.)

On April 16, 2019, Defendant filed the Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(5).[3] (Doc. No. 3.) Defendant argues the Complaint should

---

[3] Defendant also moved to dismiss Plaintiffs' claim in the Complaint for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6). In their response to the Motion, Plaintiffs agreed to withdraw the punitive damages request. Accordingly, the claim for punitive damages will not be addressed in this Opinion and the Court will enter an order dismissing that request from the case. (Doc. No. 4.)

be dismissed because Plaintiffs failed to timely effectuate service of the Complaint within ninety days under Federal Rule of Civil Procedure 4(m). (Id.) Defendant specifically alleges that he was not served with the Complaint until March 7, 2019, "well after the expiration of the ninety (90) day service deadline . . . ." (Id. at 3.)

On April 19, 2019, Plaintiffs filed a Response (Doc. No. 4), in which they argue that good cause exists for their failure to timely serve the Complaint because they "attempted to serve Dr. Sessions on December 4, 2018, before ninety days had run." (Id. at 3.)

The Motion is now ripe for disposition. For the reasons discussed below, Defendant's Motion will be denied.

### III. STANDARD OF REVIEW

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, "insufficiency of service of process" is one basis for which a defendant may seek dismissal of a complaint. Fed. R. Civ. P. 12(b)(5). A defendant may file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) when a plaintiff fails to properly serve him or her with the summons and complaint. See id.

In such a motion, "the party asserting the validity of service bears the burden of proof on that issue." Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). That party must do so by a preponderance of the evidence using affidavits, depositions, and oral testimony. State Farm Mut. Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg, 543 F. Supp. 2d 424, 428 (E.D. Pa. 2008) (quoting Villanova v. Solow, No. 97–6684, 1998 WL 643686, at *1 (E.D. Pa. Sept. 18, 1998)).

4

## IV. ANALYSIS

As stated previously, Defendant has filed a Motion to Dismiss the Complaint for failure to timely effectuate service pursuant to Federal Rule of Civil Procedure Rule 4(m). Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Third Circuit has formulated a two-part inquiry that district courts should follow to determine whether to extend time to serve under Rule 4(m). McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998). "First, the court must determine whether good cause exists for the failure to have effected service in a timely manner. If so, the extension must be granted. If good cause has not been shown, however, the court still may grant the extension in the sound exercise of its discretion." Id. "Only after a district court completes this inquiry, and declines to grant an extension of time to serve, shall a court dismiss an action for failure to serve within [90] days." Sanders-Darigo v. CareersUSA, 847 F. Supp. 2d 778, 783 (E.D. Pa. 2012) (citing Toney v. Seibert, No. 05-0449, 2005 WL 2219477, at *2-3 (W.D. Pa. Sept. 13, 2005)).

Turning to the first part of the inquiry, good cause, the Third Circuit has equated good cause with the concept of "excusable neglect" found in Federal Rule of Civil Procedure 6(b)(2). Federal Rule of Civil Procedure 6 governs the calculation of time periods in the other Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 6(b), which allows the court to extend these time periods, states in part:

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
>> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

5

> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

* * *

Fed. R. Civ. P. 6(b). To show "excusable neglect" under Rule 6(b)(1)(B), the party seeking an enlargement must demonstrate good faith and some reasonable basis for noncompliance with the time specified in the rules. Sanders-Darigo, 847 F. Supp. 2d at 783 (citing MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995)).

When evaluating whether good cause exists, a court should consider the following factors: "(1) the reasonableness of the plaintiff's efforts to effect service; (2) whether the defendant is prejudiced by the lack of timely service; and (3) whether the plaintiff moved for an enlargement of time to serve."[4] Muhammad v. Pennsylvania Dept. of Corrs., No. 5:18-cv-02647, 2019 WL

---

[4] Some courts have also considered as a factor "whether the statute of limitations will bar the plaintiff's claims if the action is dismissed." Chubb Nat'l Ins. Co. v. D'Alessio, No. 19-157, 2019 WL 2577476, at *2 (E.D. Pa. June 24, 2019). In this regard, the Third Circuit has instructed the following:

> Normally, dismissing [a] case without prejudice or extending the time for service will have the same practical effect, assuming that the statute of limitations has not run. In either event, the plaintiff has the opportunity at the proverbial "second bite." If the case is dismissed, the plaintiff simply has to refile the complaint and thus becomes entitled to a new [90] day period within which to effect service of process. Similarly, if an extension of time is granted, then the plaintiff has the opportunity to effect service within the new time limit imposed by the court. The situation changes dramatically, however, when a case is dismissed, even without prejudice, and the statute of limitations has run . . . . Thus, assuming good cause, dismissing a case without prejudice is not an appropriate remedy after the statute of limitations has lapsed.

Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1304 n.6 (3d Cir. 1995). In this case, Defendant claims that the statute of limitations on Ms. Farren's medical malpractice claims expired on March 11, 2019, two years after he performed surgery on her right wrist. (Doc. No. 3 ¶ 9.) Taking Defendant's contention as true, if the Complaint were dismissed, Plaintiffs would be required to file a new action, at which point the claims would be barred by the statute of limitations.

1552567, *5 (E.D. Pa. Apr. 10, 2019).  However, the "primary focus of the Court's inquiry should be into Plaintiff's reasons for not complying."  Chubb Nat'l Ins. Co, 2019 WL 2577476, at *2. (internal citations omitted) (finding that the plaintiff proved good cause for its failure to serve within the time limit by showing good faith efforts to serve Defendants and a reasonable basis for its failure).

Neither "reliance upon a third party or on a process server," "half-hearted efforts by counsel to effect service of process prior to the deadline," nor "inadvertence of counsel" constitutes good cause for failure to timely serve.  Sanders-Darigo, 847 F. Supp. 2d at 783 (citing Petrucelli, 46 F.3d at 1307 (internal quotation marks omitted)); accord Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 568 (3d Cir. 1996).  A "plaintiff's disregard for what she consider[s] the 'technical niceties' of service of process . . . does not constitute good cause."  Sanders-Darigo, 847 F. Supp. 2d at 783 (citing Ayres, 99 F.3d at 568).

It is undisputed that Plaintiffs did not serve process on Defendant until March 7, 2019, which exceeds the ninety-day service period required under Federal Rule of Civil Procedure 4(m). Based on the above factors, Plaintiffs have shown, however, good cause for failure to timely make service of process.

First, Plaintiffs' efforts to serve were reasonable.  Plaintiffs attempted to serve Defendant on December 4, 2018, by certified mail, four weeks after filing the Complaint and well within the ninety-day deadline.  (Doc. No. 4 at 3.)  Although the certified mail ultimately did not reach Defendant, Plaintiffs' counsel did not receive the returned envelope until January 29, 2019, only six days before the expiration of the ninety-day period.  (Id.)

---

Accordingly, this factor further persuades the Court that the Complaint should not be dismissed despite the untimely service.

7

Plaintiffs' counsel then engaged in multiple internet searches to find information on Defendant's whereabouts.[5] (Doc. No. 4-1 at 17.) Additionally, Plaintiffs' counsel attempted to locate Defendant by working with an investigator. (Id.) Finally, on March 7, 2019, Plaintiffs' counsel discovered the current address of Defendant and, the very next day, successfully sent the Complaint to that address by certified mail, return receipt requested. (Id. at 5-6.) These repeated and consistent attempts to effectuate service show that Plaintiffs made reasonable efforts to serve Defendant. Plaintiffs did not simply rely upon a third party or a process server, nor were these "half-hearted efforts by counsel to effect service of process prior to the deadline." Sanders-Darigo, 847 F. Supp. 2d at 783 (citing Petrucelli, 46 F.3d at 1307 (internal quotation marks omitted)).

Second, Defendant is not prejudiced by the untimely service of the Complaint. Prejudice "involves impairment of [the] defendant's ability to defend on the merits, rather than foregoing . . . a procedural or technical advantage." Boley v. Kaymark, 123 F.3d 756, 759 (3d Cir. 1997). Here, there is no evidence to suggest, nor does Defendant contend, that Plaintiffs' failure to make timely service impairs his ability to defend the case on its merits or otherwise prejudice him. This case is in the early stages, no answer has been filed and no discovery has been conducted. The delay in service of a month and several days does not support a finding of prejudice.

Third, although Plaintiffs did not file a motion to enlarge the time to serve and while this would have been the best practice, the failure to file such a motion does not warrant dismissal of the entire case. Plaintiffs have given plausible reasons for late service and have established "good cause."

Based on the above, the Court is satisfied that Plaintiffs had good cause for their failure to timely effectuate service on Defendant. While Plaintiffs did not move for an enlargement of time

---

[5] Plaintiffs' counsel verified these facts in an affidavit. (Doc. No. 4-1.)

to serve before the ninety days had run, the "primary focus of the Court's inquiry should be into Plaintiff's reasons for not complying." McFadden v. Weiss, No. 13-2914, 2014 WL 5880097, at *2 (E.D. Pa. Nov. 13, 2014) (citing MCI, 71 F.3d at 1097). Plaintiffs have demonstrated good faith and a reasonable basis for their noncompliance with the time limit in the rules. Therefore, the Court is persuaded that Plaintiffs have shown good cause for their failure to effectuate service in a timely manner and, for that reason, Defendant's Motion to Dismiss will be denied.

## V. CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 3) will be denied. An appropriate order follows.